IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE ESTATE OF DONALD L. ROSENBLIT, by and through its executor, ELLIOT BRAUNSTEIN, et al., | : : : | CIVIL ACTION |
| *Plaintiff*, | : : | |
| v. | : : | |
| UNITEDHEALTH GROUP, INC., et al., | : | No. 25-cv-5532 |
| *Defendants*. | : | |

<u>MEMORANDUM</u>

**KENNEY, J.**                                                                                                                                                                                           December 23, 2025

The Court writes for the Parties and assumes familiarity with the facts of the case. Defendants UnitedHealthcare Insurance Company and UnitedHealth Group, Inc. move to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 19 at 1. For the reasons set forth below, Defendants' Motion (ECF No. 19) will be **GRANTED**.

## I.    <u>BACKGROUND</u>

The following facts are drawn from the Complaint and are accepted as true at the motion-to-dismiss stage. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). Defendant UnitedHealthcare Insurance Company is a healthcare company and a subsidiary of Defendant UnitedHealth Group, Inc. (collectively, "Defendants"). *See* ECF No. 1-1 ¶ 8. At all relevant times, Defendants partnered with the American Association of Retired Persons to sell health insurance plans, including Medicare Advantage and Medicare Supplement plans, which are intended to fill gaps in Medicare coverage. *See id.* ¶¶ 16–18.

Prior to his death, decedent Donald L. Rosenblit participated in one of Defendants' supplemental plans. *Id.* ¶ 6. However, on September 13, 2024, Mr. Rosenblit passed away. *Id.* At the time Mr. Rosenblit passed away, he had been paying a monthly premium of $427 to Defendants. *See id.*

Thereafter, executor Elliot Braunstein was appointed to represent Mr. Rosenblit's estate. *See id.* Mr. Braunstein informed Defendants that Mr. Rosenblit passed away, canceled his insurance coverage, and requested a pro rata refund of Mr. Rosenblit's insurance premium for the period of September 14–30, 2024. *See id.* ¶¶ 25–26. Defendants responded that their policy was "to [not] return any premium for the month of an insured's death." *Id.* ¶ 26; *see also id.* ¶ 22 (alleging that "Defendants have instituted an internal policy not to make pro rata refunds of insurance premiums after a policy is cancelled due to death"). Accordingly, Defendants did not issue the Estate a prorated refund for September 2024. *Id.* ¶ 25.

In connection with the above events, Plaintiff initiated this putative class action in the Philadelphia County Court of Common Pleas, asserting conversion, unjust enrichment, and declaratory judgment claims. *See id.* ¶¶ 1, 36–52. Each of Plaintiff's claims stemmed from Defendants' failure to partially refund the premium for the insured's final month of coverage. *See id.* ¶¶ 37, 43, 49–50. Plaintiff defined the putative class as "[t]he estates and/or next of kin of all persons in the Commonwealth of Pennsylvania that did not receive a refund of the policyholder's unused insurance premiums from Defendants after the policyholder's death [within the applicable limitations period]." *Id.* ¶ 28. And to the Complaint, Plaintiff attached certain promotional materials for Defendants' Medicare Supplement plan. *See id.* at 16–63.

Defendants removed the action to federal court, *see* ECF No. 1 at 1–9, and subsequently moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), ECF No. 19 at 1. Defendants' Motion to Dismiss is now before this Court.

## II.    LEGAL STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding such

a motion, courts must accept the complaint's "well-pleaded facts as true," though they need not credit a complaint's statements of law and legal conclusions. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997). At the motion-to-dismiss stage, courts may consider only the complaint's allegations, "exhibits attached to the complaint," "matters of public record," and documents that are "integral to or explicitly relied upon in the complaint." *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis omitted) (citations omitted).

### III. DISCUSSION

Defendants argue that Plaintiff fails to state claims for conversion, unjust enrichment, and a declaratory judgment. *See* ECF No. 22 at 21–30. Additionally, Defendants argue that Pennsylvania's filed rate doctrine bars Plaintiff's suit. *See id.* at 17–21. The Court addresses each of Plaintiff's claims in turn before briefly turning to the filed rate doctrine.

#### A. Conversion Claim

Defendants move to dismiss Plaintiff's conversion claim for failure to state a claim and based on the gist of the action doctrine. *See id.* at 21–25. Because Plaintiff fails to state a claim for conversion, dismissal is proper. The Court therefore does not reach whether the gist of the action doctrine bars this claim.

Conversion requires (1) a "deprivation" of or interference with (2) "another's right of property in, or use or possession of, a chattel," (3) without "consent" or "lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000). Here, Plaintiff fails to plausibly allege the second and third elements—whether the Estate has a "right of property" in the prorated insurance premium that Defendants lack a "lawful justification" to possess. *See id.* Plaintiff asserts that the putative class has a "right to receive a refund of unused insurance premiums after the death of the policyholder." ECF No. 1-1 ¶ 37. That right, according to Plaintiff, is recognized by Pennsylvania common law. *Id.* ¶ 19. Plaintiff also alleges that a right to the pro

3

rata premium refund exists because Defendants "advertised, as part of their supplemental health insurance policies, that they would return any unearned monthly premium upon the death of the insured." *Id.* ¶ 3.

The Court turns first to Pennsylvania law. Plaintiff points to three cases to argue that the Estate has a right to a pro rata refund of one month's insurance premium. *See* ECF No. 24 at 10; ECF No. 1-1 ¶ 19. The first case, *Commonwealth of Pennsylvania Insurance Department v. Safeguard Mutual Insurance Co.*, 387 A.2d 647 (Pa. 1978), *see* ECF No. 24 at 10, considered whether an insurer was "required to maintain an unearned premium reserve" under a provision of the Pennsylvania Insurance Department Act—40 Pa. Stat. Ann. § 91. *See Safeguard Mut. Ins. Co.*, 387 A.2d at 650. There, the court stated in passing that "[w]hen an insurer collects a premium on a policy before its expiration, part of the premium is unearned." *Id.* It then turned to § 91, which "requires the maintenance of such a reserve, but exempts certain companies." *Id.* (citation omitted). The court concluded that, under § 91, the insurer was exempt from maintaining a premium reserve. *See id.*

But *Safeguard Mutual Insurance Co.* does not create a right to a prorated premium refund here. First, Plaintiff does not plausibly establish that the statute addressed in *Safeguard*—40 Pa. Stat. Ann. § 91—applies in this case. That statute expressly states that it does not apply "in the case of noncancellable health and accident insurance." 40 Pa. Stat. Ann. § 91.[1] Defendants'

---

[1] Section 91 states that for noncancellable health insurance, "such amount shall be calculated according to the methods set out in section 311.1 of this act [40 P.S. § 93]." However, section 311.1 has since been repealed. *See* 2016 Pa. Laws No. 59, at 30. Instead, other provisions of Pennsylvania law now govern refunds of Medicare Supplement premiums. *See* 40 Pa. Stat. and Cons. Stat. Ann. § 7111 *et seq.*; 31 Pa. Code § 89.770 *et seq.*; 40 Pa. Stat. Ann. § 3101 *et seq.* Those provisions establish a policyholder's right to a refund under certain circumstances, but not under the circumstances alleged here. *See, e.g.*, 31 Pa. Code § 89.780(b) (establishing that Medicare Supplement insurers must provide refunds when they fail to meet certain loss ratio standards); 31 Pa. Code § 73.127 (setting forth refund requirements for credit health insurance policies, among other policies). Plaintiff does not argue that any of these other statutory provisions

Medicare Supplement policy is one such policy. *See* Ctrs. for Medicare & Medicaid Services & Nat'l Ass'n of Ins. Comm'rs, Choosing a Medigap Policy, at 9 (2025), https://www.medicare.gov/publications/02110-medigap-guide-health-insurance.pdf [https://perma.cc/GGW5-L575] (noting that any Medigap (Medicare Supplement) policy is "guaranteed renewable" and cannot be canceled "as long as you stay enrolled and pay the premium"); *see also* ECF No. 31 at 11–12.[2] And Plaintiff does not develop an argument otherwise and instead omits this portion of the statute in discussing § 91. *See, e.g.*, ECF No. 24 at 10. Second, Defendants' 2024 Medicare Supplement Policy submission to the Pennsylvania Insurance Department, which was approved by the Commissioner, states that the premium is "earned on the first of the month for the entire month in which it is due."[3] *See* ECF No. 19-4 at 2, 23. Thus, even if *Safeguard* stands

---

establish the Estate's right to a refund.

[2] While the Complaint states only that Mr. Rosenblit had insurance supplementing Medicare through Defendants, *see* ECF No. 1-1 ¶ 6, 17, Plaintiff specifically references and attaches promotional materials for some of Defendants' Medicare Supplement plans to the Complaint. And the Parties appear to agree that Mr. Rosenblit specifically had a Medicare Supplement policy.

[3] The Court can consider Defendants' 2024 rate filing and the Commissioner's approval of the filing. Though courts generally may not consider extrinsic evidence at the motion-to-dismiss stage, courts are permitted to consider, among other things, "matters of public record." *See Schmidt*, 770 F.3d at 249. Courts may take notice of matters of public record only for their existence, not for "the truth of the factual assertions made therein." *Gross-Quatrone v. Mizdol*, 811 F. App'x 95, 99 (3d Cir. 2020).

Here, Defendants' 2024 rate filing and the Commissioner's approval of this filing are publicly available through the Pennsylvania state government website. *See Search Insurance Company Filings*, Commonwealth of Pennsylvania, https://www.pa.gov/agencies/insurance/posted-filings-reports-company-orders/product-and-rate-filings/insurance-company-filings-search [https://perma.cc/S5S6-H5MQ] (last visited Dec. 21, 2025) (Defendants' 2024 Medicare Supplement rate filing and Commissioner's approval available via "SERFF Filing Access Search Tool"). And the Court takes notice of these materials for their existence—that is, for the existence of an approval by the Commissioner of a 2024 rate filing that represented that the "[p]remium is earned on the first of the month for the entire month in which it is due." *See* ECF No. 19-4 at 23; *see also Christoph v. AARP, Inc.*, No. CV 18-3453, 2019 WL 4645172, at *2 n.4 (E.D. Pa. Sept. 23, 2019); *Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 415 (S.D.N.Y. 2009) ("The Court may . . . take judicial notice of [insurance rate] filings with government agencies that are a matter of public record"), *aff'd*, 379 F. App'x 30 (2d Cir. 2010).

5

for the proposition that a health insurer must refund an "unearned" insurance premium, the Pennsylvania Department of Insurance approved a rate structure in which it was represented that the premium is earned on the first day of the month for the full month.

Plaintiff points to two others cases—*Sheppard v. Old Heritage Mutual Insurance Co.*, 425 A.2d 304 (Pa. 1980), and *Titlow v. Reliance Life Insurance Co.*, 92 A. 747 (Pa. 1914), but neither establishes a right to a partial refund for the final month of an insured's coverage either. *Sheppard* addressed the same provision of the Pennsylvania Insurance Department Act, 40 Pa. Stat. Ann. § 91, as *Safeguard Mutual Insurance Co. See* 425 A.2d at 309 n.4. As established above, that statutory provision does not apply to the type of policy in this case. And when *Shephard* discussed unearned premiums in passing, it did so to define the "unearned premium reserve" required by this statute. *Id.* Likewise, *Titlow* addressed premium refunds in the context of a wholly different issue altogether—the effect of a default on a quarterly paid life insurance policy. *See* 92 A. at 749. There, the Pennsylvania Supreme Court held that the insurer could treat the default as an intent "to rescind the contract" and that the insurer could "join in that rescission and thereby relieve itself of all further liability on the policy, but, only upon refunding what it had received." *Id.* Unlike *Titlow*, Plaintiff's case does not address the effect of a default. Plaintiff has therefore failed to point to a case establishing a right entitling the Estate to a prorated refund of the final month of the insured's coverage.

Plaintiff also alleges that "Defendants' own advertising materials directly state that 'the

---

Plaintiff does not challenge the authenticity of the 2024 rate filing or Defendants' reliance on this document at the motion-to-dismiss stage. *See* ECF No. 24 at 6–21. And in fact, Plaintiff cites a number of times to Defendants' insurance materials in his Complaint and Opposition. *See* ECF No. 1-1 ¶¶ 3, 21; ECF No. 24 at 8, 10–12. Even if the Court were unable to consider Defendant' 2024 rate filing at the motion-to-dismiss stage, Plaintiff fails to state a claim regardless. It is Plaintiff's burden to show the Estate's claims are plausible. And, as discussed *infra* Section III.A–C, because neither Pennsylvania common law nor any other ground creates a right to a prorated premium refund for the final month of an insured's coverage, Plaintiff fails to state a claim.

[c]ertificate [of insurance] provides a refund of any unearned monthly premium upon the death of an insured,'" ECF No. 1-1 ¶ 21 (alteration in original) (citation omitted), and Plaintiff attaches certain promotional materials seemingly for Defendants' health insurance plans in Texas, *see id.* at 19, 38, 40 (referring to Texas). Those promotional materials do not establish a right to a prorated refund either. Even assuming advertising materials could establish a right for the purposes of conversion, or could nullify any lawful justification for retaining the full month's premium, those materials state only that "unearned" premiums will be refunded, leaving the threshold question of when the premium is earned. *See id.* at 42. In any case, Plaintiff has not shown that advertising materials for Defendants' Texas policies plausibly establish a right to a refund under Pennsylvania law.

Plaintiff also cites to federal Medicare & Medicaid regulations, *id.* ¶ 20, but later clarifies that the Estate is not arguing that federal law creates the right at issue in this case, *see* ECF No. 24 at 17 ("Plaintiff's Complaint does not cite this regulation to establish Defendants' liability but rather to demonstrate that federal regulations require *pro rata* premium refunds in similar circumstances."). Regardless, the federal regulations to which Plaintiff points, *see* ECF No. 1-1 ¶ 20, require the Centers for Medicare & Medicaid Services to refund premiums prepaid "for months after the enrollee's death," 42 CFR § 408. 112. Unlike that obligation under federal law, Plaintiff seeks a prorated refund for the month of the decedent's death, not for the months after. *See* ECF No. 1-1 ¶ 4, 25; ECF No. 24 at 7.

In light of the above, Plaintiff has failed to plausibly allege that Defendants deprived a right of property without lawful justification. The Pennsylvania Insurance Department approved a rate filing in which Defendants represented that the full month's premium was earned on the first day of the month. *See* ECF No. 19-4 at 2, 23. And neither Pennsylvania common law, nor Pennsylvania statute, nor any other basis established that retaining the full month's premium is unlawful. *See*

*McKeeman*, 751 A.2d at 659 n.3 (for conversion, requiring a deprivation without "consent" or "lawful justification"). Thus, Plaintiff has failed to state a claim for conversion. And because Plaintiff has failed to state a claim for conversion, the Court need not reach Defendants' argument that the gist of the action doctrine bars Plaintiff's claim. *See* ECF No. 22 at 21–22.

### B. Unjust Enrichment Claim

The Court turns next to Plaintiff's unjust enrichment claim. Defendants argue that (1) Plaintiff has not plausibly pled that retaining the full month's premium is inequitable, (2) unjust enrichment cannot serve as a standalone claim, and (3) an unjust enrichment claim cannot be brought for conduct governed by a contract. ECF No. 22 at 25–28. The Court will dismiss the unjust enrichment claim because Plaintiff has not plausibly pled that retaining the full month's premium is inequitable.

Unjust enrichment requires the plaintiff to confer a benefit on the defendant, for the defendant to appreciate the benefit, and for the defendant's retention of the benefit to be inequitable under the circumstances. *Artisan Builders, Inc. v. Jang*, 271 A.3d 889, 892 (Pa. Super. Ct. 2022). The third element requires a plaintiff ultimately to establish that the defendant's receipt of the benefit was improper and "would be unconscionable for [the defendant] to retain." *Spolar v. Spolar Fam. Trust*, 326 A.3d 995, 1003 (Pa. Super. Ct. 2024) (citation omitted).

Plaintiff does not plausibly plead that Defendants received the full month's premium improperly for the final month of the insured's coverage or that it would be unconscionable for Defendants to retain that share of the premium. As discussed *supra* Section III.A, Pennsylvania common law does not create a right to a prorated refund for the final month of an insured's policy. Nor does another basis for such a right exist. Instead, Pennsylvania statutes comprehensively regulate the circumstances under which refunds are due, and that framework does not appear to require a refund here. And the Pennsylvania Insurance Department approved Defendants' rate

8

filing, which included that the premium for the full month would be earned on the first day of the month. *See* ECF No. 19-4 at 2, 23. Nothing Plaintiff points to plausibly establishes that such a rate structure is unconscionable. Accordingly, as with Plaintiff's conversion claim, Plaintiff fails to state an unjust enrichment claim. *See Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris*, 171 F.3d 912, 937 (3d Cir. 1999) (affirming dismissal of unjust enrichment claim where closely related tort claims were also dismissed).

### C. Declaratory Judgment Claim

Plaintiff also brings a declaratory judgment claim, which is premised on the same conduct as Plaintiff's other claims—the failure to issue a prorated refund of the insured's premium. ECF No. 1-1 ¶¶ 47–52. Because Plaintiff has failed to plausibly plead that this conduct is unlawful, the declaratory judgment claim will also be dismissed. *See Stobba Residential Assocs., L.P. v. FS Rialto 2019-FL 1 Holder, LLC*, 311 A.3d 573, 2023 WL 8542590, at *9 (Pa. Super. Ct. 2023) (unpublished table decision) (affirming grant of summary judgment as to declaratory judgment claim where the plaintiff's "request for a declaratory judgment is based upon its other claims"); *cf. Alhabra v. Rubio*, No. CV 24-854, 2025 WL 985457, at *8 (D.D.C. Apr. 2, 2025) (with respect to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, concluding that "[b]ecause the Plaintiffs' other claims fail, their Declaratory Judgment Act claim must also be dismissed").

Plaintiff argues that "[t]he Declaratory Judgment claim does not necessarily depend on the outcomes of Counts I and II," and cites cases in which courts determined that a declaratory judgment claim did not wholly duplicate other claims. *See* ECF No. 24 at 20 (*first citing Raymond v. Wagner*, No. 2:23-CV-01508, 2024 WL 150130, at *4–5 (W.D. Pa. Jan. 12, 2024), *then citing Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 267 (E.D. Pa. 2022)) However, here, because Plaintiff has failed to plausibly show that Defendants' conduct is unlawful, there is no basis for a declaratory judgment claim. In any case, here the "outcome" of all three

claims "depend[s] on the adjudication of" whether retaining the full month's premium is unlawful or inequitable. *See Raymond*, 2024 WL 150130, at *5.

### D. Filed Rate Doctrine

Lastly, this Court turns to Pennsylvania's filed rate doctrine, which Defendants argue bars Plaintiff's suit in full. *See* ECF No. 22 at 17. According to Defendants, that doctrine prohibits litigants from collaterally attacking rates, such as insurance premiums, that have been approved by a state or federal entity. *See id.* at 17–18. And because the Pennsylvania Insurance Commissioner approved Defendants' 2024 premium rates, Defendants argue that the filed rate doctrine applies to this suit. *See id.* at 18.

As reflected above, the approval of Defendants' rates by the Commissioner has implications for Plaintiff's ability to state a claim. *See supra* Section III.A–B. The rate filing Defendants submitted to the Commissioner came with certain terms, such as that premiums would be earned on the first day of the month for the full month. *See* ECF No. 19-4 at 23. And because Plaintiff failed to plausibly show that, notwithstanding the Commissioner's approval, this rate structure was unlawful or unconscionable, Plaintiff fails to state a claim. *See supra* Section III.A–B.

It appears that Plaintiff's suit could be a collateral attack on the Commissioner's decision-making, too, insofar as the Commissioner approved Defendants' premium rates, which included terms regarding when the premium was earned. But this Court need not go so far as to decide this case as a matter of the filed rate doctrine. Pennsylvania appellate courts have rarely commented on this doctrine, let alone whether and to what extent it applies to health insurance premiums. In fact, the Pennsylvania Supreme Court expressly declined to decide whether the doctrine applies in the context of health insurance. *Ciamaichelo v. Independence Blue Cross*, 909 A.2d 1211, 1218 n.8 (Pa. 2006). And the few Pennsylvania Superior Court decisions regarding a "filed rate

10

doctrine" primarily deal with the federal filed rate doctrine, which is created by federal statute. *See, e.g.*, *Commc'ns Network Int'l v. Mullineaux*, 187 A.3d 951, 956 (Pa. Super. Ct. 2018) (discussing a filed rate doctrine arising from federal telecommunications law). Instead, the Pennsylvania filed rate doctrine appears to be predominantly developed by federal district court cases. *See* ECF No. 22 at 17–18 (Defendants' brief, overwhelmingly citing district court cases on this issue); *see also Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1331 (11th Cir. 2018) (Jordan, J., dissenting) (noting the lack of Pennsylvania state law as to a filed rate doctrine).

It may be possible that Plaintiff's suit collaterally attacks the Pennsylvania Insurance Department's approval of Defendants' rate structure. But given the paucity of Pennsylvania law on this topic, and because Plaintiff has failed to state a claim, the Court need not speculate further as to whether Pennsylvania courts would apply the filed rate doctrine to bar this suit.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 19) will be **GRANTED**. An appropriate Order will follow.

                                    **BY THE COURT:**

                                    /s/ Chad F. Kenney

                                    **CHAD F. KENNEY, JUDGE**